STATE OF CONNECTICUT, DEPT. OF HUMAN RESOURCES and Wayne H. Camillieri

v.

UNITED STATES MERIT SYSTEMS PROTECTION BOARD.
(Two Cases)

STATE OF CONNECTICUT, DEPT. OF HUMAN RESOURCES and Jack I. Winkleman

v.

UNITED STATES MERIT SYSTEMS PROTECTION BOARD.
(Two Cases)

Civ. Nos. H–87–406(JAC), Civ. H–87–779(JAC), Civ. H–88–65(JAC) and Civ. H–88–335(JAC).

United States District Court,
D. Connecticut.

July 24, 1989.

Robert B. Teitelman, Asst. Atty. Gen., Hartford, Conn., for State of Conn., Dept. of Human Resources.

Stephen B. Delaney, Delaney and Delaney, Hartford, Conn., for Wayne H. Camillieri.

Barbara J. Collins, Gagne and Associates, Hartford, Conn., for Jack I. Winkleman.

John B. Hughes, Asst. U.S. Atty., New Haven, Conn., and Sheila Mooney, U.S. M.S.P.B., Washington, D.C., for U.S. Merit Systems Protection Bd.

## RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

JOSÉ A. CABRANES, District Judge:

These cases challenge the legality and constitutionality of determinations and orders of the defendant United States Merit Systems Protection Board ("the Board") applying the Hatch Act, 5 U.S.C. § 1501 *et seq.*,[1] to plaintiffs Wayne H. Camillieri ("Camillieri") and Jack I. Winkleman ("Winkleman"), employees of the plaintiff State of Connecticut, Department of Human Resources ("the DHR"). The Board determined that Camillieri and Winkleman had each violated 5 U.S.C. § 1502(a)(3) by seeking elective office while employed by the DHR, and it further determined that these violations warranted the removal of Camillieri and Winkleman from their positions. After being informed by the DHR that Camillieri and Winkleman would not be removed, the Board ordered that federal funds be withheld from the DHR in an amount equal to two years' pay of Camillieri and Winkleman. Pursuant to 5 U.S.C. § 1508, the DHR, Camillieri, and Winkleman seek judicial review of these determinations and orders.[2]

Now pending before the court are motions for summary judgment filed by both sides.[3] The parties had stipulated to the material facts in the proceedings before the Board, and they have adopted these stipulations for purposes of these motions. On December 7, 1987 oral argument was held on the motions for summary judgment in Civil Action No. H–87–406(JAC) and Civil Action No. H–87–779(JAC) ("the Camillieri cases"). I reserved decision and requested a supplemental memorandum. Soon afterward, Civil Action No. H–88–65(JAC) and Civil Action No. H–88–335(JAC) ("the Winkleman cases") were filed. The Winkleman cases appeared to raise virtually identical factual and legal issues as the Camillieri cases, and I ordered the four cases consolidated for pretrial purposes on June 17, 1988. I also deferred ruling on the summary judgment motions in the Camillieri cases until the Winkleman cases had reached the same procedural posture, so I could rule on both sets of cases at once.

On May 15, 1989 I issued an order noting that substantially similar motions for summary judgment were now pending in the Camillieri cases and the Winkleman cases and stating that I would rely on the December 7, 1987 oral argument in deciding the

---

**1.** Another portion of the Hatch Act applies to certain employees of the federal government and the government of the District of Columbia. *See* 5 U.S.C. § 7324.

**2.** Civil Action No. H–87–406(JAC) seeks review of the determination that Camillieri had committed a violation that warranted removal; Civil Action No. H–87–779(JAC) seeks review of the order withholding federal funds in an amount equal to two years' pay of Camillieri; Civil Action No. H–88–65(JAC) seeks review of the determination that Winkleman had committed a violation that warranted removal; and Civil Action No. H–88–335(JAC) seeks review of the order withholding federal funds in an amount equal to two years' pay of Winkleman.

**3.** The DHR and the Board have each moved for summary judgment in all four cases, while Camillieri has moved for summary judgment in Civil Action No. H–87–406(JAC) and Winkleman has moved for summary judgment in Civil Action No. H–88–65(JAC).

motions pending in both sets of cases without having any additional oral argument. None of the parties raised any objections to this manner of proceeding, and therefore the motions are now ripe for decision.[4]

## FACTS

The material facts in these cases are undisputed.

### A.

Camillieri joined the DHR in 1979. By 1983, he had obtained the position of Human Resources Chief of Social Work Services. In that year he was elected to the Hartford City Council.

In January 1985 Camillieri was reassigned within the DHR to the position of Acting Chief of the Fair Housing Unit. The purpose of this reassignment was to give Camillieri a job that required less involvement with federally funded activities, while avoiding violation of the Connecticut law prohibiting demotion (or transfer to a noncomparable position) on the basis of political activities. In Camillieri's new position, he spent a little less than half of his time in duties related to federally funded programs, primarily training and supervising hearing examiners who review appeals by individual applicants for participation in these programs. Camillieri himself neither heard these appeals nor set the policies under which the appeals were adjudicated. In addition, although he had the authority to review the decisions of the hearing examiners, in practice he only made revisions as to grammar and style.

On May 31, 1985 the Office of Special Counsel to the Board informed Camillieri that the Hatch Act prohibited him from being a candidate for reelection as councilman while maintaining his job with the

DHR, and it warned him that seeking reelection would be considered a willful violation of the Hatch Act which could lead to his removal from his position with the DHR. In July 1985, Camillieri announced that he was running for reelection. During his candidacy for reelection, Camillieri remained on active duty as Acting Chief of the Fair Housing Unit. Camillieri was defeated in the primary election on September 10, 1985.

On March 10, 1986 the Office of Special Counsel to the Board filed a complaint with the Board charging Camillieri with a violation of 5 U.S.C. § 1502(a)(3).[5] On December 18, 1986 the Board's Chief Administrative Law Judge issued a recommended decision concluding that Camillieri was covered by the Hatch Act, because of the amount of time he spent in federally funded activities and the authority he had to review decisions concerning the disbursement of federal funds, and further concluding that he had knowingly violated the Hatch Act. The recommended decision also found that the violation warranted Camillieri's removal from his position with the DHR. On May 12, 1987, the Board adopted this decision as its determination pursuant to 5 U.S.C. § 1505. On September 29, 1987, after being informed by the DHR that Camillieri would not be removed, the Board ordered, pursuant to 5 U.S.C. § 1506, that federal funds be withheld from the DHR in an amount equal to two years' pay of Camillieri, $90,150.

### B.

Throughout 1986 Winkleman held the position of Human Resource Development Senior Representative in the Monitoring and Evaluation Division of the DHR. In

---

**4.** Also ripe for decision were motions to dismiss the Special Counsel of the Board as a separately named defendant. Since the record reflected that the Special Counsel had been properly named as a party and served, the DHR had no objection to dismissal, and I granted these motions, absent objection, in each case on June 26, 1989.

**5.** This section provides, in pertinent part, that "[a] State or local officer or employee may not ...

be a candidate for elective office." In turn the term "State or local officer or employee" is defined, subject to exceptions not here relevant, as "an individual employed by a State or local agency whose principal employment is in connection with an activity which is financed in whole or in part by loans or grants made by the United States or a Federal agency." 5 U.S.C. § 1501(4).

that position, he reviewed and evaluated the management and effectiveness of community and social service programs funded in large part by federal grants. On July 25, 1986, Winkleman notified the Town Clerk of Wallingford that he was running as the Republican Party candidate for Judge of Probate.

On October 9, 1986, the Office of Special Counsel to the Board informed Winkleman that the Hatch Act prohibited him from being a candidate for Judge of Probate while maintaining his job with the DHR. During his candidacy for Probate Judge, Winkleman remained on active duty as a Human Resource Development Senior Representative with the Monitoring and Evaluation Division. A campaign organization was formed in furtherance of Winkleman's race to become Probate Judge, and he solicited votes, authorized advertisements, and incurred campaign expenses. Winkleman was defeated in the general election on November 4, 1986.

On March 6, 1987, the Office of Special Counsel to the Board filed a complaint with the Board charging Winkleman with a violation of 5 U.S.C. § 1502(a)(3). On September 24, 1987, the Board's Chief Administrative Law Judge issued a recommended decision concluding that Winkleman was covered by the Hatch Act and had violated the Hatch Act by being a candidate for the position of Probate Judge, because he actively campaigned for that office and received votes in a partisan election. The recommended decision further found that the violation warranted Winkleman's removal from his position with the DHR. On January 26, 1988, the Board adopted this decision as its determination pursuant to 5 U.S.C. § 1505. On May 18, 1988, after being informed by the DHR that Winkleman would not be removed, the Board ordered, pursuant to 5 U.S.C. § 1506, that federal funds be withheld from the DHR in an amount equal to two years' pay of Winkleman, $60,896.

## DISCUSSION

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). As the material facts are undisputed, I must determine for each motion whether, viewing the inferences to be drawn from the facts in the light most favorable to the party opposing the motion, *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), the moving party is entitled to a judgment as a matter of law.

In reviewing a determination of the Board under 5 U.S.C. § 1505, or an order of the Board under 5 U.S.C. § 1506, "[t]he court shall affirm the determination or order ... if the court determines that it is in accordance with law." 5 U.S.C. § 1508. Plaintiffs contend that the Board's determinations and orders applying the Hatch Act to Camillieri and Winkleman violated their rights under the First and Tenth Amendments to the United States Constitution, as well as their constitutional right to equal protection of the laws. They also contend that the determination that each violation "warrants the removal of the officer or employee from his office or employment," 5 U.S.C. § 1505(2), was arbitrary, capricious, and an abuse of discretion. Winkleman further contends that the determination and order with respect to him were not in accordance with law because the position of Judge of Probate is not an "elective office" within the meaning of 5 U.S.C. § 1502(a)(3).[6] For the non-constitutional

**6.** Winkleman also maintains that the determination and order of the Board deprived him of his property interest in his continued employment with the DHR without due process of law, in violation of the requirements of *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). This argument is inapplicable to the present case because Winkleman is still employed by the DHR in the same position, and he therefore has not been deprived of any property interest. Even assuming *arguendo* that the actions of the Board could in some sense be said to have deprived Winkleman of his continued employment, the Board provided the notice of the charges, explanation of the evidence, and oppor-

challenges, the Supreme Court has indicated that a court should not reverse a decision if the Board "had solid footing in the [Hatch] Act for [its] conclusion," *Oklahoma v. United States Civil Serv. Com'n,* 330 U.S. 127, 145, 67 S.Ct. 544, 554, 91 L.Ed. 794 (1947) (*"Oklahoma"*).

## A. *Constitutional Challenges*

Plaintiffs argue that the application of the Hatch Act in this case unconstitutionally infringes upon Camillieri's and Winkleman's rights of political association and political expression under the First Amendment. They also argue that it unconstitutionally intrudes upon the sovereign powers reserved to the State of Connecticut by the Tenth Amendment, specifically the state's power to choose and regulate its own employees. Their third constitutional argument is that the application of the Hatch Act in this case violates Camillieri's and Winkleman's rights to equal protection of the laws, because the prohibition against being a candidate for elective office that the Board applied to Camillieri and Winkleman would not apply to other state employees. In order to evaluate these constitutional challenges to the determinations and orders at issue here, it is necessary to consider the four Supreme Court cases addressing the constitutionality of various provisions of the Hatch Act.

## B. *The Supreme Court Decisions*

*United Public Workers of America (C.I.O.) v. Mitchell,* 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947) (*"Mitchell"*), addressed the question of whether George P. Poole, a roller in a United States Mint who was also a ward executive committeeman of a political party and worker at the polls on election day, could constitutionally be disciplined for violating the Hatch Act pro-

hibition against federal employees "taking an active part in political management or in political campaigns," 5 U.S.C. § 7324(a)(2). Considering challenges based upon Poole's rights under the First Amendment and the Due Process Clause of the Fifth Amendment, 330 U.S. at 95, 67 S.Ct. at 567, and also challenges based upon the "political rights reserved to the people by the Ninth and Tenth Amendments," 330 U.S. at 94, 67 S.Ct. at 567, the Court held that disciplinary action against this federal employee would not be unconstitutional. *Mitchell,* 330 U.S. at 103, 67 S.Ct. at 571.

On the same day as it decided *Mitchell,* the court also issued its decision in *Oklahoma.* There, one France Paris [7] had been both a member of the State Highway Commission of Oklahoma and the chairman of the Democratic State Central Committee for Oklahoma. The United States Civil Service Commission [8] determined that Paris had taken an active part in political management and in political campaigns, in violation of 5 U.S.C. § 1502(a)(3) as it then read,[9] and it further determined that this violation warranted removal. 330 U.S. at 133, 67 S.Ct. at 548. The State of Oklahoma brought suit for judicial review under 5 U.S.C. § 1508, contending, *inter alia,* that "[t]he coercive effect of the authorization [by the Hatch Act] to withhold sums allocated to a state is ... an interference with the reserved powers of the state" under the Tenth Amendment. 330 U.S. at 142, 67 S.Ct. at 553. The Supreme Court disagreed, holding that this application of the Hatch Act to Oklahoma did not violate the Tenth Amendment. 330 U.S. at 143, 67 S.Ct. at 553. The Court also stated,

> In ... *Mitchell* ... we have considered the constitutionality of this provision from the viewpoint of interference with a

---

tunity to be heard required by *Loudermill* through the hearing conducted before the Chief Administrative Law Judge. To the extent Winkleman is alleging that the DHR rather than the Board failed to accord him due process, those claims would have to be raised in a suit against the DHR.

**7.** Curiously, nowhere in his opinion in *Oklahoma* does Justice Reed remark in any way on this extraordinary name. Suffice it to say that this is not a typographical or editorial error.

**8.** The United States Civil Service Commission had responsibility for administration of the Hatch Act prior to the creation of the Board.

**9.** Prior to its amendment in 1974, 5 U.S.C. § 1502(a)(3) prohibited a State or local officer or employee from "tak[ing] an active part in political management or in political campaigns" rather than from "be[ing] a candidate for elective office."

federal employee's freedom of expression in political matters and as to whether acting as an official of a political party violated the provision in [§ 1502] against taking part in political management or in political campaigns. We do not think that the facts in this case require any further discussion of that angle.

330 U.S. at 142, 67 S.Ct. at 553.

Twenty-six years after *Mitchell* and *Oklahoma,* the Supreme Court again considered the constitutionality of the Hatch Act in *United States Civil Serv. Com'n v. National Assoc. of Letter Carriers, AFL-CIO,* 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973) (*"Letter Carriers"*). This case involved another challenge by federal employees to the Hatch Act prohibition against "taking an active part in political management or in political campaigns," 5 U.S.C. § 7324(a)(2). In discussing this challenge, the Court said,

> We unhesitatingly reaffirm the *Mitchell* holding that Congress had, and has, the power to prevent Mr. Poole and others like him from holding a party office, working at the polls, and acting as party paymaster for other party workers. An Act of Congress going no farther would in our view unquestionably be valid. *So would it be if, in plain and understandable language, the statute forbade activities such as ... becoming a partisan candidate for, or campaigning for, an elective public office....* Our judgment is that neither the First Amendment nor any other provision of the Constitution invalidates a law barring this kind of partisan political conduct by federal employees.

413 U.S. at 556, 93 S.Ct. at 2886 (emphasis added). The Court went on to hold that § 7324(a)(2) was neither unconstitutionally vague nor unconstitutionally overbroad.

A companion case to *Letter Carriers, Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973) (*"Broadrick"*), featured a challenge by state employees to a state statute that prohibited them from being, *inter alia,* "a candidate for nomination or election to any paid public office," 413 U.S. at 606, 93 S.Ct. at 2912.

The Court held that this statute was also neither unconstitutionally vague nor unconstitutionally overbroad. It also stated that, insofar as the statute forbade the employees from "becoming ... candidates for any paid public office," it did not violate the First Amendment (as made applicable to the states by the Fourteenth Amendment). 413 U.S. at 616–17, 93 S.Ct. at 2918. Moreover, the Court indicated that the statute's distinction between "classified" civil service employees (to whom the statute applied) and "unclassified" ones (to whom it did not) did not violate the Equal Protection Clause of the Fourteenth Amendment. *See* 413 U.S. at 607 n. 5, 93 S.Ct. at 2913 n. 5.

The Supreme Court has thus upheld the constitutionality of the Hatch Act against various attacks. Plaintiffs contend, however, that these decisions "are not consistent with the present day understanding of the First Amendment," Memorandum in Support of Motion for Summary Judgment Filed by State of Connecticut, Department of Human Resources and in Opposition to Motion for Summary Judgment filed by U.S. Merit Systems Protection Board (filed Aug. 21, 1987 in Civil Action No. H–87–406(JAC)) ("DHR's Memorandum") at 10, and were "not made in accordance with the Tenth Amendment standard that the Court has subsequently articulated," *id.* at 26–27, n. 13. They also assert that the cases addressing First Amendment and Equal Protection challenges to the Hatch Act involved only federal regulation of federal employees and state regulation of state employees, not the federal regulation of state employees presented in this case, DHR's Memorandum at 10, n. 6 and at 35–36, and that the case addressing the Tenth Amendment challenge involved only a determination that a Hatch Act violation warranted removal, not an order to withhold federal funds from a state, Supplemental Memorandum of State of Connecticut, Department of Human Resources (filed Dec. 31, 1987 in Civil Action No. H–87–406(JAC)) ("DHR's Supplemental Memorandum") at 16–17.

In addressing these contentions of plaintiffs, I am mindful of the Supreme Court's

recent admonition in *Rodriguez de Quijas v. Shearson/American Express, Inc.,* —— U.S. ——, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989). The Court of Appeals for the Fifth Circuit had required certain claims to go to arbitration, despite a 1953 Supreme Court case (*Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168) to the contrary, on the grounds that later Supreme Court cases had reduced the 1953 case to "obsolescence." Although it affirmed, the Supreme Court stated,

> We do not suggest that the Court of Appeals on its own authority should have taken the step of renouncing *Wilko.* If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.

*Rodriguez de Quijas,* 109 S.Ct. at 1921–22. Keeping this approach in mind, I will now consider plaintiffs' various constitutional challenges.

## C. *First Amendment*

With regard to the claimed infringements upon Camillieri's and Winkleman's rights of political association and political expression under the First Amendment, I conclude that *Mitchell, Oklahoma, Letter Carriers,* and *Broadrick* directly apply to these cases and demonstrate that no First Amendment violation has occurred. *Mitchell* upholds the constitutionality of the Hatch Act provision covering federal employees; *Oklahoma* applies the analysis of *Mitchell,* as it relates to freedom of expression, to the Hatch Act provision prohibiting state employees from taking an active part in political management or in political campaigns; *Letter Carriers* reaffirms *Mitchell* and states that a federal government prohibition against federal employees becoming partisan candidates for elective public of-

fice or campaigning for elective public office would not violate the First Amendment; and *Broadrick* allows a state government to forbid state employees from becoming candidates for paid public office. The clear consequence of these opinions is that infringements upon the ability of government employees, be they federal or state, to be candidates for elective office do not violate the First Amendment. I fail to see how the fact that the infringements upon state employees Camillieri and Winkleman were imposed by the federal government makes any difference in determining whether the First Amendment permits the infringement, especially since *Oklahoma* involved federal regulation of state employees.

## D. *Tenth Amendment*

[2] Turning next to the claimed violation of the Tenth Amendment, *Oklahoma* is directly controlling. Plaintiffs appear to concede as much. *See* Transcript of Oral Argument held December 7, 1987 (filed Dec. 21, 1987) ("Transcript") at 43. Although Congress has amended the Hatch Act since the time of the *Oklahoma* decision, the amended § 1502(a)(3) (prohibiting "be[ing] a candidate for elective office") is less restrictive than the old provision (prohibiting "tak[ing] an active part in political management or in political campaigns") and therefore presents even less of a claim for a Tenth Amendment violation than the argument rejected by the Supreme Court in *Oklahoma.*[10] While I am sympathetic to the federalism concerns raised by plaintiffs regarding this part of the Hatch Act, especially in light of the restrictions placed upon states in removing employees from their positions by our developing constitutional law, *see, e.g., Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), I must follow *Oklahoma* and conclude that no unconstitutional intrusion upon the sovereign powers re-

---

10. I disagree with plaintiffs' contention that the present cases differ from *Oklahoma* because an order withholding funds from the state has actually issued here. The *Oklahoma* court certainly envisaged a withholding order, *see* 330 U.S. at 133, 67 S.Ct. at 548, and in fact indicated the

state had standing to sue because of "the special interest Oklahoma had in preventing the exercise of the Civil Service Commission's power to direct that Oklahoma's funds be withheld," 330 U.S. at 137, 67 S.Ct. at 550 (footnote omitted).

served to the State of Connecticut by the Tenth Amendment has taken place.

### E. *Equal Protection*

■ Plaintiffs' final claim is that the application of the Hatch Act in this case violates Camillieri's and Winkleman's rights to equal protection of the laws. Specifically, plaintiffs challenge the constitutionality of the statutory classifications that would prohibit Camillieri and Winkleman from being candidates for elective office but would allow the candidacies of the Governor or Lieutenant Governor or mayor of a city, 5 U.S.C. § 1502(c)(1) and (2), "an individual holding elective office," 5 U.S.C. § 1502(c),[11] a state employee outside the executive branch and its agencies and departments,[12] or "an individual employed by an educational or research institution, establishment, agency, or system which is supported in whole or in part by a State or political subdivision thereof, or by a recognized religious, philanthropic, or cultural organization," 5 U.S.C. § 1501(4)(B). This challenge also must fail.

I recognize that this constitutional argument, unlike the previous two, does not fall within the direct application of any of the Supreme Court cases upholding the Hatch Act. Nonetheless, I note that in *Broadrick* the Court concluded that a state statute that distinguished between "classified" civil service employees, who were not allowed to become candidates for paid public office, and "unclassified" ones, who were, did not violate the Equal Protection Clause of the Fourteenth Amendment. The Court stated that "the legislature must have some leeway in determining which of its employment positions require restrictions on partisan political activities and which may be left unregulated. And a State can hardly be faulted for attempting to limit the positions upon which such restrictions are placed." 413 U.S. at 607, n. 5, 93 S.Ct. at 2913, n. 5 (citation omitted). I see no reason why the distinctions between Camillieri and Winkleman on the one hand, and the kinds of state employees not covered on the other hand, are not within the leeway envisaged by *Broadrick*.

Accordingly, the determinations and orders at issue here were in accordance with the Constitution.

### F. *Non–Constitutional Challenges*

■ Plaintiffs appear to concede that the determination and order with respect to Camillieri were "in accordance with law" if they did not violate the Constitution. *See* Transcript at 20, DHR's Supplemental Memorandum at 3. In any event, the Board's determination that despite his transfer Camillieri was still covered by the Hatch Act and had committed a violation was well within its discretion, as was its determination that since Camillieri acted knowingly and willfully the violation warranted removal from office. *See State of Minnesota Dept. of Jobs and Training v. Merit Systems Protection Bd.*, 875 F.2d 179 (8th Cir.1989) (en banc) (determination by Board that Hatch Act violation warranted removal from office because violation was willful and knowing, where person relied on court opinion that conduct was not violation, was within Board's discretion). I am aware of no persuasive authority, and none has been brought to my attention, for plaintiffs' contention that the failure of the Board to conclude that Camillieri's Hatch Act violation was *de minimus* constituted an abuse of discretion.[13]

---

11. This subsection does not exempt all persons holding elective office, but only those whose elective position involves administration of, or responsibility for, federally funded projects. *Northern Virginia Regional Park Auth. v. United States Civil Serv. Com'n*, 437 F.2d 1346, 1351–52 (4th Cir.), *cert. denied*, 403 U.S. 936, 91 S.Ct. 2254, 29 L.Ed.2d 717 (1971).

12. The requirements of 5 U.S.C. § 1502(a)(3) only apply to individuals employed by a State or local agency, and "State or local agency" is defined as "the executive branch of a State, municipality, or other political subdivision of a State, or an agency or department thereof." 5 U.S.C. § 1501(2).

13. The fact that Camillieri, despite his authority to do so, did not routinely make substantive decisions regarding federally funded programs does not seem sufficient to create a *de minimis* violation. In *Mitchell* the Court held that a roller with a United States Mint could be disciplined under the Hatch Act.

Winkleman contends that the determination and order with respect to him were not in accordance with law because the position of Judge of Probate is not an "elective office" within the meaning of 5 U.S.C. § 1502(a)(3). The Board concluded otherwise, because Winkleman was a partisan candidate for the position in a partisan general election. This conclusion "had solid footing in the [Hatch] Act," *Oklahoma,* 330 U.S. at 145, 67 S.Ct. at 554.

Excluded from the prohibition against being a candidate for elective office is the situation in which "none of the candidates is to be nominated or elected at such election as representing a party any of whose candidates for Presidential elector received votes in the last preceding election at which Presidential electors were selected," 5 U.S.C. § 1503, *i.e.,* the situation in which the election does not contain Democratic or Republican nominees. Winkleman, on the other hand, was the Republican candidate for Probate Judge. Since the Hatch Act was directed at situations "when employees participate or are directly affiliated with a political party," *Biller v. United States Merit Systems Protection Bd.,* 863 F.2d 1079, 1090 (2d Cir.1988), I cannot find that the determination that Winkleman had violated the Hatch Act was not in accordance with law. *See Brandon v. Southwest Mississippi Senior Services, Inc.,* 834 F.2d 536, 537 (5th Cir.1987) (employee covered by Hatch Act who ran as independent for position of Justice Court Judge, in election where other candidates were partisan, violated the Hatch Act). Once the Board determined that Winkleman had committed a violation, then (as with Camillieri) there was no abuse of discretion in its determination that, since Winkleman had been warned, the violation warranted removal.

Accordingly, the undisputed facts show that the Board's determinations and orders in these cases were "in accordance with law" within the meaning of 5 U.S.C. § 1508. Judgment must therefore enter in favor of the Board in all four cases.

## CONCLUSION

For the foregoing reasons, Respondent Merit Systems Protection Board's Motion for Summary Judgment (filed Aug. 6, 1987 in Civil Action No. H–87–406(JAC)), Respondent Merit Systems Protection Board's Cross–Motion for Summary Judgment (filed Nov. 10, 1987 in Civil Action No. H–87–779(JAC)), Respondent Merit Systems Protection Board's Cross–Motion for Summary Judgment (filed March 31, 1988 in Civil Action No. H–88–65(JAC)), and Respondent Merit Systems Protection Board's Cross–Motion for Summary Judgment (filed July 8, 1988 in Civil Action No. H–88–335(JAC)) are all GRANTED.

The DHR's Motion for Summary Judgment (filed Aug. 21, 1987 in Civil Action No. H–87–406(JAC)), Motion for Summary Judgment (filed Oct. 22, 1987 in Civil Action No. H–87–779(JAC)), Motion for Summary Judgment (filed March 14, 1988 in Civil Action No. H–88–65(JAC)), and Motion for Summary Judgment (filed June 22, 1988 in Civil Action No. H–88–335 (JAC)); Camillieri's Motion for Summary Judgment (filed Sept. 16, 1987 in Civil Action No. H–87–406(JAC)); and Winkleman's Motion for Summary Judgment (filed July 14, 1988 in Civil Action No. H–88–65(JAC)) are all DENIED.

Judgment shall enter in favor of the United States Merit Systems Protection Board in Civil Action No. H–87–406(JAC), Civil Action No. H–87–779(JAC), Civil Action No. H–87–65(JAC), and Civil Action No. H–88–335(JAC).

It is so ordered.