Dear Mr. Friels:
You advise this office that you are an elected alderman for the Town of Cottonport. You ask this office if the law permits you to hold any position of employment with the Town of Cottonport Housing Authority (the Authority) while holding the office of alderman. In the alternative, you ask if you may serve as a member of the Town of Cottonport Housing Authority Board (the Board) while continuing to serve in the elected office of alderman.
I. The Town of Cottonport Housing Authority.
The Louisiana Housing Authorities Law is found at La.R.S. 40:381, et seq. Under this law, a public housing authority is authorized to engage in the acquisition, development, and administration of a low rent housing program to provide safe, sanitary, and affordable housing to eligible citizens of the municipality.[1]
As authorized by law, the Authority has legal title to a 60-unit apartment complex, located in the Town of Cottonport, in which the Authority operates a low rent housing program. Funding is provided based on rents paid by the tenants and *Page 2 
operating fund payments received by the Department of Housing and Urban Development.[2] See Town of Cottonport Housing Authority AuditReport for 2008, Audit Control #72091055, Louisiana Legislative Auditor, pages 3 and 6.
State law provides for Authority employees as follows: (1) the executive director, an unclassified position; (2) employees in the state classified civil service; (3) one unclassified position of employment; and (4) professional employees employed on a contract basis, all unclassified.[3]
We now turn to an examination of the law regarding your legal ability to hold each referenced position of employment while holding the elected office of alderman.
II. An elected alderman may not also hold full-time appointiveoffice as the Executive Director of the Authority.
The statutory definitions relative to dual officeholding and dual employment[4] reflect that a position of employment is compensated.[5] In contrast, a person may hold an appointiveoffice which is compensated or uncompensated. A position is considered an appointive office rather than employment where the position is established by the constitution, statutes, home rule charter provisions or ordinances of a municipality or parish, and the position is appointed by another elected or appointed official, or a body of officials.[6] *Page 3 
The position of Executive Director of the housing authority constitutes an "appointive office" under the state dual officeholding provisions, because the position is "specifically established . . . by the laws of this state" and is "filled by appointment . . . by a governmental body" pursuant to La.R.S. 40:539(C){1), which provides:
C.(1) The authority shall select a secretary who shall be the executive director and chief executive and administrative officer of the authority. He shall serve at the pleasure of the authority. The authority shall fix the compensation of the executive director.
La. Atty. Gen. Ops. 06-0119, 99-357, 95-178, 96-176, and 96-149 conclude that the executive director of a housing authority holds an appointive office.
The dual officeholding law prohibits a person holding elective office in a political subdivision of the state from also holding full-time appointive office.[7] Application of this law to the matter at hand requires this office to conclude that an alderman is prohibited from holding the full-time appointive office of executive director for the Authority.
III. An elected alderman may not also hold a classified positionof employment with the Authority within the state civil service.
The State Civil Service Rules govern personnel practices and are binding for state classified employees in all state agencies and departments. Authority for the rules is derived from Article X of the Louisiana State Constitution. A position of employment with the Authority which falls within the classified state civil service is subject to Civil Service Rule 14.1(f) which states:
No person elected to public office shall, while serving in such elective office, be appointed to or hold any position in the Classified Service.
It is the opinion of this office that the civil service laws prohibit an elected alderman from holding employment with the Authority in a position falling within the state classified service. *Page 4 
IV. While an elected alderman is not prohibited by the state dualofficeholding law from holding an unclassified position of employmentwith the Authority, the federal Hatch Act may prevent the holding shouldthe alderman become a candidate for re-election to office.
La.R.S. 42:63(D)[8] prohibits one from holding employment in the same political subdivision in which he holds elective office, but does not prohibit one from holding local elective office and employment in aseparate political subdivision of the state. As the municipality of Cottonport and the Authority are separate political subdivisions of the state[9], it is the opinion of this office that the dual officeholding provisions do not prevent an alderman from holding a position of unclassified employment with the Authority.
However, here the federal Hatch Act, 5 U.S.C. §§ 1501-1508, must be reviewed for possible application. The Hatch Act restricts the political activity of persons principally employed by a state or local agency who work in connection with programs financed in whole or in part by funds.[10] A state or local employee covered by the Hatch Act may not run for partisan office.[11]
The federal agency responsible for enforcing the Hatch Act is the Merit Systems Protection Board (the MSPB). Charges for violations of the Hatch Act are instituted against the employee by the Office of Special Counsel. *Page 5 
As noted above, the Hatch Act applies to officers and employees of state executive agencies whose principal employment is in connection with an activity which is financed in whole or in part by federal funds.[12] The Merit Systems Protection Board has found state housing authorities to be state executive agencies within the scope of the Hatch Act.[13]
While the Act prohibits a covered employee from running for public office in a partisan election, the Act does not prohibit a covered employee from holding public office. "Recall what the statute forbids — candidacy in a partisan election. There is no bar in holding an office. It is candidacy which triggers the Act." SeeSpecial Counsel v. Carter, 45 M.S.P.R. 447 (1990) at 453.
In the publication entitled State and Local Hatch Act Advisory:Elected Official Who Becomes a State Employee, dated March 10, 1998, the Office of Special Counsel advises "because the Hatch Act does not prohibit a covered employee from holding public office, the state employee would be allowed to finish out his elected term despite the fact that he works in connection with a federally funded program." A copy of this document is enclosed for your review.
An individual already holding elective office, who intends to hold employment with a federally funded agency such as the Authority, must first resolve any doubt regarding application of the Hatch Act by requesting an advisory opinion from the Office of Special Counsel.[14]
The failure of an employee to request an advisory opinion from Special Counsel is an aggravating factor that is weighed by the MSPB to determine whether a violation of the Hatch Act warrants removal of the employee.[15]
We express no opinion regarding the application of the Hatch Act to your specific circumstances; rather, we suggest you consult the U.S. Office of Special Counsel for an advisory opinion addressing your situation. You may request such advice by phone, fax, mail or e-mail, to the following: *Page 6 
 Hatch Act Unit U.S. Office of Special Counsel 1730 M Street, N.W., Suite 218 Washington, D.C. 20036-4505 Tel: (800) 85-HATCH or (800) 854-2824 (202) 254-3650 Fax: (202) 254-3700 E-mail: hatchact@osc.gov
We also enclose for your review a copy of the publication entitledPolitical Activity and the State and Local Employee, issued by the United States Office of Special Counsel, which summarizes the laws, regulations and policies that guide federal enforcement of the Hatch Act.
V. While an elected alderman is not prohibited by the state dualofficeholding law from holding employment with the Authority on acontract basis, the federal Hatch Act may prevent the holding should thealderman become a candidate for re-election to office.
The dual officeholding provisions do not apply to an individual employed on a contract basis, because he does not hold a position of "employment" as defined by the dual officeholding law. "An independent contractor, as opposed to a servant (employee), usually contracts to do a specific amount of work according to his own methods. The employer exerts little control over the action of the independent contractor. Mode of payment is not decisive in determining whether an employee is actually an independent contractor, though payment by the job indicates the existence of an independent contractor/employee relationship."See La. Atty. Gen Op. 80-413, copy attached.
It is the opinion of this office that the dual officeholding law does not prohibit an elected alderman from also holding a professional services contract with the Authority. However, should the alderman intend to seek re-election to office during the time he is under contract with the Authority, the Hatch Act may prove applicable. Again, this is a question which must be directed to the Office of Special Counsel for resolution.
VI. While an elected alderman is not prohibited by the state dualofficeholding law from also holding part-time appointive office ascommissioner of the housing authority board, the federal HatchAct may prevent the holding should the alderman become a candidate forre-election to office. *Page 7 
The Town of Cottonport Housing Authority Board consists of five commissioners, who are appointed by the Mayor of Cottonport under the authority of La.R.S. 40:531 (A).[16] Because the position of commissioner is "specifically established . . . by the laws of this state" and is "filled by appointment . . . by an elected or appointed public official . . ." under La.R.S. 42:62(2), a commissioner holds an appointive office for purposes of the dual officeholding law. The position is held on a part-time basis.[17]
As mentioned previously, La.R.S. 42:63(D) prohibits an elected official from holding full-time appointive office; however, the statute does not prohibit an elected official from holding a part-time appointive office. The limitation here is that while the general dual officeholding provisions would not prohibit the holding, an examination of the duties of each position must be made, to determine if the holding is prohibited by the incompatibility provisions of La.R.S. 42:64. La.R.S. 42:64(5) prohibits one from holding two positions where "one office, whether or not in conjunction with fellow officers, or employment is charged with auditing the accounts of or approving the budget of the other position." Further, La.R.S. 42:64(6) prohibits one from holding two positions where "funds received by one office or employment are deposited with or turned over to the other office or position."
It is the opinion of this office that the incompatibility provisions of La.R.S. 42:64 are inapplicable here. First, La.R.S. 40:384(16) provides that the Authority is a political subdivision of the state and functions "independent[ly] from the municipality or parish which established or establishes it or which may appoint some or all of its commissioners." Second, there is no transfer of funds between the Town of Cottonport and the Authority. Thus, it is the opinion of this office that *Page 8 
the dual officeholding provisions do not prohibit an elected alderman from also holding the part-time appointive office of housing authority board commissioner.
However, we again caution that the Hatch Act may be violated if an alderman seeks re-election while serving as a commissioner of the board which governs the Authority. You must also seek the opinion of the Office of Special Counsel regarding this issue.
We hope the foregoing is helpful to you. Should you have other questions in which we may provide assistance, please contact this office.
Very truly yours,
JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
BY:__________________________ KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL
KLK:arg
[1] See La.R.S. 40:391.
[2] The federal Housing and Community Development Act of 1974 created rental assistance programs for low and moderate income families. These programs are administered by the Department of Housing and Urban Development, often through a local public housing authority. See Section Eight Existing ("Certificate"), New-Construction, and Substantial-Rehabilitation programs, codified at 42 U.S.C. § 1437f (1974).
[3] La.R.S. 40:539(8) states:
(8) Except as provided in the Constitution of Louisiana and as may otherwise be authorized by the State Civil Service Commission, all employees of the authority, except authority members, the executive director, and one other employee whom the authority shall designate and employ, and except professional employees employed on a contract basis, shall be in the classified state civil service.
[4] The Louisiana Dual Officeholding and Dual Employment Law is found within the provisions of La.R.S. 42:61, et seq.
[5] La.R.S. 42:62(3) defines employment as "any job compensated on a salary or per diem basis, other than an elective or appointive office, in which a person is an employee of the state government or of a political subdivision thereof."
[6] La.R.S. 42:62((2) defines appointive office as "any office in any branch of government or other position on an agency, board, or commission or any executive office of any agency, board, commission, or department which is specifically established or specifically authorized by the constitution or laws of this state or by the charter or ordinances of any political subdivision thereof and which is filled by appointment or election by an elected or appointed public official or by a governmental body composed of such officials of this state or of a political subdivision thereof."
[7] La.R.S. 42.63(D) provides, in part: "No person holding an elective office in a political subdivision of this state shall at the same time hold another elective office or full-time appointive office in the government of this state or in the government of a political subdivision thereof . . ."
[8] La.R.S. 42.63(D) provides, in part: "No person holding an elective office in a political subdivision of this state shall at the same time hold . . . employment . . . in the same political subdivision in which he holds an elective office . . ."
[9] La.R.S. 40:531(16) provides that a local housing authority "is a political subdivision of this state, independent from the municipality or parish which established or establishes it or which may appoint some or all of its commissioners . . ."
[10] 5 USCA 1501(4) defines a local employee as: "state or local officer or employee" means an individual employed by a State or local agency whose principal employment is in connection with an activity which is financed in whole or in part by loans or grants made by the United States or a Federal agency.
[11] 5 USCA 1502(a)(3) states: "A State or local officer or employee may not . . . be a candidate for elective office." This prohibition extends is candidacy in a partisan election; candidacy in a nonpartisan election is permitted under 5 USCA 1503.
A partisan election is any primary election, general election or special election where at least one of the candidates for the office represents a major political party, such as the Democratic party or the Republican party. See 5 U.S.C.A. § 1503 (West 1996); 5 C.F.R. § 151.101 (2000);Connecticut v. United States Merit Sys. Prot. Bd.,718 F. Supp. 125, 133 (D. Conn. 1989); In re Pizzutello, 1 M.S.P.R. 261, 264 (1979); In re Murphy, 1 M.S.P.R. 45, 48 (1979).
[12] The First Circuit Court of Appeal, in the case of Department ofState Civil Service v. Housing Authority of East Baton Rouge and theHousing Authority of Lake Charles), held local housing authorities are State agencies or, alternatively, instrumentalities of the State. See also Mullins v. State, 387 So.2d 1151 (La. 1980).
[13] See Special Counsel v. Carter, 45 M.S.P.R. 447 (1990);Special Counsel v. Purnell, 37 M.S.P.R. 184 (1988); In reGrandison, 1 M.S.P.R. 21 (1979).
[14] The Office of Special Counsel is authorized by federal statute to issue advisory opinions concerning application of the Hatch Act. See 5 U.S.C.A. § 1212(f) (West 1996).
[15] See In re Grindle, 1 M.S.P.R. 34, 40 (1979).
[16] La.R.S. 40:531 (A)(1) provides:
Appointment of commissioners to local housing authority
A. (1) When the governing body of any municipality or parish, as the case may be, has determined, by resolution as set forth in La.R.S. 40:393, that it is expedient to establish a local housing authority, the chief elected official of the municipality or parish, or if no such official exists, then the governing body itself shall appoint five persons who shall constitute the governing body of the local housing authority and shall be called commissioners.
[17] La.R.S. 42:62(4) defines full-time as "the period of time which a person normally works or is expected to work in an appointive office or employment which is at least seven hours per day of work and at least thirty-five hours per week of work."
La.R.S. 42:62(5) defines part-time as "the period of time which a person normally works or is expected to work in an appointive office or employment which is less than the number of hours of work defined in this Section as full-time."